### UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF NEW HAMPSHIRE

Melodie Coyman

      v.                                       Civil No. 10-cv-387-SM

Michael J. Astrue, Commissioner,
Social Security Administration

### **REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. § 405(g), Melodie Coyman moves to reverse the Commissioner's decision denying her application for social security disability insurance benefits ("DIB"), under Title II of the Social Security Act, 42 U.S.C. § 423.   The Commissioner moves to affirm the decision.   For the reasons that follow, I recommend that the decision be reversed.

### **Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g) (setting out the standard of review for DIB decisions).   However, the court "must uphold a denial of social security . . . benefits unless 'the [Commissioner] has committed

a legal or factual error in evaluating a particular claim.'"
Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996)
(quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's
findings of fact be supported by substantial evidence, "[t]he
substantial evidence test applies not only to findings of basic
evidentiary facts, but also to inferences and conclusions drawn
from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-
18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730
(2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than
[a] mere scintilla.  It means such relevant evidence as a
reasonable mind might accept as adequate to support a
conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st
Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401
(1971)).  But, "[i]t is the responsibility of the [Commissioner]
to determine issues of credibility and to draw inferences from
the record evidence.  Indeed, the resolution of conflicts in the
evidence is for the [Commissioner], not the courts." Irlanda
Ortiz v. Sec'y of HHS, 955 F.2d 765, 769 (1st Cir. 1991)
(citations omitted).  Moreover, the court "must uphold the
[Commissioner's] conclusion, even if the record arguably could
justify a different conclusion, so long as it is supported by
substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529,
535 (1st Cir. 1988).  Finally, when determining whether a

2

decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

**Background**

The parties have submitted a Joint Statement of Material Facts, doc. no. 15.  That statement is part of the court's record and "describe[s] all facts pertinent to the decision of the case . . . ." LR 9.1(b)(2).  The factual statement is summarized here, to the extent necessary rather than repeated in full.

Melodie Coyman filed an application for social security disability insurance benefits, on July 7, 2008, when she was forty-two years old.  She is a high school graduate and has worked in the past as a custom framer, a hair salon receptionist, and an esthetician.  Coyman is married and has one child. Coyman's last insured date was December 31, 2007.  Her alleged onset date is May 11, 2006.

During the pertinent time period, Dr. Susan Porter was Coyman's primary care physician.  On May 16, 2006, Coyman told Dr. Porter that she was experiencing worsening arm and neck pain with pins and needles in both arms every night.  Dr. Porter found that Coyman's neurological examination was unchanged but that her trapezius muscles on both sides of her neck and shoulders were

tight and tender.  Dr. Porter recommended physical therapy and acupuncture, along with the medication, Flexeril, to be used at night.  Coyman stated that she was too busy taking care of her son and her sick mother to have time for physical therapy or acupuncture.

Coyman had an appointment with Dr. Martin Pruss in September of 2006, for neck and throat pain after a root canal procedure and an abscess.  Dr. Pruss noted Coyman's history with temporomandibular joint ("TMJ") pain and chronic neck and shoulder pain.  On examination, Dr. Pruss found that Coyman was not in apparent distress and that her neck and throat area were normal except for tenderness along the floor of her mouth and some tender lymph nodes.  Dr. Pruss prescribed Percocet for TMJ pain and explained the relationship between the abscess and tender lymph nodes.

On April 30, 2007, Coyman saw Dr. Porter due to shoulder, arm, and neck pain that had increased the frequency of her headaches.  Dr. Porter noted that Coyman looked tired and uncomfortable and found that she was tender at the base of both thumbs and that her neck was tender and tight.  Dr. Porter referred Coyman to Dr. Roderick J. Bruno for consultation on Coyman's shoulder, arm, wrist, and hand pain.

Dr. Bruno saw Coyman on May 31, 2007.  On examination, Dr. Bruno found that Coyman was not in acute distress, that her gait

4

and affect were normal, and that her neck was not tender and had a full range of motion.  Dr. Bruno also found a full range of motion in Coyman's shoulders, elbows, forearms, wrists, and hands and full rotator cuff strength.  Other test results were negative.  Dr. Bruno did find some possible early arthritic changes in both thumb joints, x-rays showed arthritis with joint space narrowing and mild sclerosis, and "shuck, grind, and subluxation tests were positive."  He recommended splinting to relieve symptoms and therapy.

On June 27, 2007, Coyman told Dr. Porter that she was doing stretching at home and using Valium for insomnia.  Coyman also said she had frequent headaches and neck and jaw pain.  Dr. Porter found that Coyman's trapezius muscle was tight and tender on both sides.  Dr. Porter noted on November 8, 2007, that Coyman's episode of chest pain and anxiety had been resolved with medication.  Although Coyman complained of arm pain, Dr. Porter found that her left shoulder had a full range of motion and that her right shoulder was tender but caused no apparent distress with moderate motion.

Dr. Porter completed a Physical Residual Functional Capacity Questionnaire on July 31, 2008.  Dr. Porter stated that she had been treating Coyman since 1999 and had diagnosed chronic severe headaches, fibromyalgia, and osteoarthritis.  Dr. Porter stated that emotional factors contributed to the severity of Coyman's

5

symptoms and functional limitations.  In her opinion, Coyman was incapable of performing even low-stress jobs because her pain would frequently interfere with her attention and concentration. Dr. Porter also thought that Coyman would need several unscheduled breaks during a work day of ten to fifteen minutes and that she would be absent more than four days each month.

With respect to her physical limitations, Dr. Porter found that Coyman could walk for thirty minutes and stand for less than two hours during an eight hour day.  Dr. Porter found that Coyman could lift and carry less than ten pounds and could rarely carry up to twenty pounds.  Coyman could use her hands to grasp and twist and use her fingers for only ten percent of an eight-hour day, and could not reach at all.  Dr. Porter reiterated her findings in a "To Whom It May Concern" letter, dated February 1, 2009.

Two non-examining consultative physicians, Drs. Green and Cataldo, reviewed Coyman's medical records and assessed her physical capacity.  They found that Coyman could occasionally lift up to twenty pounds, frequently lift ten pounds, and sit, stand, and walk for six hours in an eight-hour day.  Both physicians found that Coyman had some postural limitations and some restrictions in her ability to reach.  Dr. Pruss reviewed her records for mental functioning and concluded that there was

insufficient evidence to support any assessment of an impairment due to psychiatric issues.

A hearing before an Administrative Law Judge ("ALJ") was held on March 22, 2010.  Coyman, who was represented by an attorney, testified.  Coyman testified that she cared for her son with help from her husband and her mother, that she was able to drive around town except when she had a migraine headache, but that her hands hurt while driving.  Coyman explained that her most significant problem was her migraine headaches.  She said that when she had a headache, her mother and husband had to take care of her son.  She also described her TMJ problem.

Coyman said that her fibromyalgia had worsened to the point that she could not lift a gallon of milk, open a bottle or a jar, read, or write.  She said medication made her conditions worse.  She said that her pain interrupted her sleep, that she had gone to the emergency room several times because of pain, and that she rested to avoid pain.  She testified that she had a torn labrum and rotator cuff and a bone spur in her right shoulder which caused pain when she tried to lift things.  She further testified that she had not had arm surgery but had had trigger point injections and nerve blocks for fibromyalgia.

A vocational expert also testified at the hearing.  In his first hypothetical question, the ALJ described a person who could do light work with postural limitations, could do fingering with

7

both hands, could only occasionally reach overhead with her right
arm, and could carry out moderately complex instructions.  The
vocational expert responded that with those limitations, Coyman
could return to her former work as a receptionist.  The ALJ then
limited Coyman's hypothetical ability to carry out instructions
to one or two-step instructions without fast-paced production
requirements.  The vocational expert testified that with those
restrictions Coyman could not return to her work as a
receptionist but could work at several unskilled jobs, including
as a cashier and a furniture rental clerk.

        In the third hypothetical, the ALJ restricted Coyman to
sedentary work with postural limitations and with the ability to
frequently finger with both hands, only occasionally reach with
her right arm, and to understand only one or two-step
instructions.  Based on that hypothetical, the vocational expert
identified sedentary jobs that Coyman could do as a telemarketer,
call-out operator, document preparer, telephone quotation clerk,
and addresser.  The ALJ added a further limitation, requiring
absences or arriving late twice a week due to headaches, and in
response the vocational expert testified that none of the jobs
could be done with that limitation.  When Coyman's attorney asked
about the effect of a limitation that she would not be able to
use her fingers for 90% of the day, the vocational expert stated
that Coyman could not do any of the identified jobs.

The ALJ issued his decision on April 1, 2010.  He found that Coyman had severe impairments due to fibromyalgia, headaches, and osteoarthritis.  He also found that through her last insured date, December 31, 2007, Coyman was able to do sedentary work with postural limitations, with only occasional overhead reaching with her right arm, with frequent fingering using both hands, and with a limitations to simple, two-step instructions without a fast pace requirement.  The ALJ found that Dr. Porter's assessment of Coyman's functional capacities was overstated in relation to Dr. Porter's own records, Coyman's daily activities, and other objective medical findings.  The ALJ also found Coyman's description of the severity of her symptoms and limitations to be inconsistent with the objective medical evidence.  The ALJ concluded that Coyman was unable to return to any of her former work but she was able to do the sedentary jobs the vocational expert identified.  As a result, the ALJ found that Coyman was not disabled.

The Decision Review Board affirmed the ALJ's decision, making it the final decision of the Commissioner.  Coyman then sought review in this court.

### Discussion

Coyman contends that the decision should be reversed because the ALJ failed to properly credit her testimony about her

9

symptoms and limitations and failed to give her treating
physician's opinion appropriate weight, which resulted in an
erroneous decision.  The Commissioner argues that the ALJ
properly assessed both Coyman's credibility and her treating
physician's opinion and that substantial evidence supports the
decision.  Coyman is correct on both counts.

### A.  Coyman's Credibility

To make a determination about a claimant's credibility with
respect to her claims of the effects of her symptoms, an ALJ must
consider (1) the claimant's activities, (2) the location,
duration, frequency, and intensity of the medical symptoms, (3)
precipitating and aggravating factors, (4) the type, dosage,
effectiveness and side effects of any medication, (5) treatment
other than medication the claimant receives, (6) measures
claimant uses for pain relief, and any other functional
limitations and restrictions due to the claimant's impairments.
20 C.F.R. § 404.1529(c)(3).  The ALJ's credibility determination
is entitled to deference when the ALJ explains the bases for the
determination in relation to other record evidence and provides
specific findings.  Frustaqalia v. Sec'y of HHS, 829 F.2d 192,
195 (1st Cir. 1987).  A claimant's ability to do household chores
is not the same as an ability to effectively work at a job but

may be considered in assessing her credibility.  Teixeira v.
Astrue, 755 F. Supp. 2d 340, 347 (D. Mass. 2010).

     Coyman testified that her most significant problem was her
migraine headaches, coupled with her neck and jaw pain.  Coyman
described the limitations caused by her headache pain, including
that her husband and mother have to take care of her son when she
has a migraine, that she can not lift or bend, that she finds it
hard to concentrate and to sleep, and that the medications she
takes make her "a little spacey."  She also testified that she
can do more on good days, when she is not having a headache.  She
further testified about the effects of neck and jaw pain, as well
as arthritis in her wrists and thumbs.

     The ALJ discredited Coyman's testimony about the severity of
her symptoms due to a lack of objective medical evidence.  He
acknowledged that headaches and fatigue were chronic symptoms,
had "worn her down," and limited her daily functioning.  He noted
her ability to do many activities on good days and concluded that
despite her headaches and other symptoms she was able to do
sedentary work with a limitation to routine jobs because of her
headaches.

      The ALJ does not explain what objective medical evidence he
expected but did not find to support the headache symptoms Coyman
describes.  His consideration of Coyman's daily activities was
taken from what she could do on a good day only, and not what she

11

could do while having a migraine headache.  Dr. Porter documented
Coyman's problems with headaches.  Coyman was prescribed and took
medication for migraines.  Further, it is unclear whether
Coyman's ability to take care of her son when he was not at
school and with the help of her mother and husband, and to do
other activities occasionally, is evidence of an ability to work
full time.

The ALJ made no findings about the frequency of her
headaches or about the effect of headache pain on her ability to
work, other than to limit her to simple and routine work.  <u>Cf.</u>
<u>Buckner v. Astrue</u>, 646 F.3d 549, 558 (8th Cir. 2011) (ALJ's
credibility determination given deference when properly
explained).  In short, the ALJ failed to explain the bases and to
provide specific findings to support his determination that
Coyman's subjective description of her headache pain was not
entirely credible.  Therefore, the ALJ's credibility
determination is not entitled to deference.

### B.  Medical Opinion Evidence

"Medical opinions are statements from physicians . . . that
reflect judgments about the nature and severity of [a claimant's]
impairment(s), including [a claimant's] symptoms, diagnosis and
prognosis, what [a claimant] can still do despite impairment(s),
and [a claimant's] physical or mental restrictions."  20 C.F.R. §

404.1527(a)(1).  In making a disability determination, the ALJ is required to consider "the medical opinions in [the claimant's] case record together with the rest of the relevant evidence [in the record]." § 404.1527(b).  When there are inconsistencies in the evidence, including the medical opinions, an ALJ is obligated to weigh all the evidence.  § 404.1527(c)(2).

As a general rule, more weight should be given to opinions from medical sources who have examined a claimant than to opinions from nonexamining medical sources.  See § 404.1527(d)(1).  The regulations also acknowledge that "State agency medical and psychological consultants . . . are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation." § 404.1527(f)(2)(i). "[T]he administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant . . . as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources." § 404.1527(f)(2)(ii); see also Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *7.

Coyman contends that the ALJ erred in failing to give Dr. Porter's opinion of her residual functional capacity controlling weight.  A treating source's opinion on the nature and severity of the claimant's impairments will be given controlling weight if

13

the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." § 404.1527(d)(2).  The ALJ "'may reject a treating physician's opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that evidence consists of reports from non-treating doctors.'"  Coggon v. Barnhart, 345 F. Supp. 2d 40, 52 (D. Mass. 2005) (quoting Castro v. Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002), and citing Rosario v. Apfel, 85 F. Supp. 2d 62, 67 (D. Mass. 2000)).

Dr. Porter is Coyman's treating physician with a long treatment relationship.  In her residual functional capacity assessment of Coyman, Dr. Porter noted diagnoses of chronic severe headaches, fibromyalgia, and osteoarthritis but indicated clinical findings only to support osteoarthritis, which is present in both of Coyman's hands, especially her thumbs. Because of the effect of osteoarthritis, Dr. Porter wrote that Coyman could do work requiring grasping, turning, and twisting of objects or fine manipulation only ten percent of an eight-hour work day.  Dr. Porter stated that Coyman was incapable of even low stress jobs because basic household chores and childcare were more than she could manage.  In addition to other limitations, Dr. Porter wrote that Coyman would experience good and bad days

and on average would be absent from work more than four days each month.

In his decision, the ALJ stated that he had considered Dr. Porter's opinion, which he found somewhat persuasive because of her long treatment relationship with Coyman.  The ALJ concluded, however, that Dr. Porter's assessment of Coyman was "somewhat overstated relative to her own treatment records, the claimant's activities of daily living and objective medical findings generally."  Admin. Rec. 15.  The ALJ also considered the consulting physicians' opinions but found their assessments did not adequately account for the effects of Coyman's headaches and fatigue.  As such, the ALJ fashioned his own residual capacity assessment without relying on any of the physician's opinions.

The ALJ found that Coyman was capable of sedentary work with certain postural and reaching limitations and that she was "also restricted to understanding, remembering and carrying out simple, one and two step instructions, and would be limited to jobs with routine workplace changes and no fast-paced production requirements."  Admin. Rec. at 14.  The ALJ explained his residual functional capacity as being "supported by the lack of objective medical evidence substantiating the claimant's testimony as well as the claimant's reports of the level of activities she engages in on a daily basis."  Id. at 15.

Although the ALJ accepted Dr. Porter's diagnosis of migraine headaches, he rejected Dr. Porter's assessment that the headaches would cause Coyman to be absent from work more than four days each month.  Instead, the ALJ accounted for Coyman's headaches by limiting her to simple, slow-paced work.  His assessment is not supported by any physician's opinion, and he does not explain why Coyman would not be absent due to headaches as Dr. Porter assessed.[1]  As presented, the ALJ lacked a sufficient basis not to credit Dr. Porter's residual functional capacity assessment. See Banks v. Astrue, 2010 WL 3724683, at *6-7 (W.D. Ark. Sept. 16, 2010) (discussing ALJ's failure to consider properly treating physician's opinion about effect of migraine headaches); Moore v. Astrue, 2010 WL 2166629, at *8-9 (N.D. Ill. May 27, 2010) (ALJ must explain what weight given to treating physician's opinion and the bases for that determination).

C.  Summary

The vocational expert testified at the hearing that a person with a sedentary residual functional capacity and with likely absences or a shortened workday for up to two days each week could not do any of the jobs that were available for a less

---

[1]To the extent the ALJ's assessment is based on his view of Coyman's daily activities, as explained above, the ALJ mistakenly relied on Coyman's activities on good days without considering the effects of her headaches on bad days.

16

restricted functional capacity.  Dr. Porter's assessment of
Coyman's functional capacity included a finding that Coyman's
headache pain would frequently interfere with her attention and
concentration, that she would need several unscheduled breaks
during a work day, and that she would be absent more than four
days each month.  If Dr. Porter's assessment were credited, the
vocational expert's opinion does not provide jobs that Coyman
could do.  Substantial evidence is lacking in the record to
support the ALJ's decision that Coyman is not disabled.

### Conclusion

For the reasons given, I recommend that the claimant's
motion to reverse the decision (document no. 13) be granted and
that the Commissioner's motion to affirm (document no. 14) be
denied.  This is a sentence four remand.

Any objections to this report and recommendation must be
filed within fourteen (14) days of receipt of this notice.  See
Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the
specified time waives the right to appeal the district court's
order.  <u>See</u> <u>Sch. Union No. 37 v. United Nat'l Ins. Co.</u>, 617 F.3d

554, 564 (1st Cir. 2010); <u>United States v. Lugo Guerrero</u>, 524
F.3d 5, 14 (1st Cir. 2008).

_____
Landya B. McCafferty
United States Magistrate Judge

November 3, 2011

cc:  Maureen A. Howard, Esq.
     Robert J. Rabuck, Esq.